IN THE UNITED STATES DISTRICT COURT

FOR THE D STRICT OF UTAH, CENTRAL DIVISION

* * * * * * * *

| | | |
|---|---|---|
| ANGELA M. ARMSTRONG, in dividually and as the personal representativ : of the Estate of Michael D. Valent, | ) ) ) | |
| | ) | No. 2:97-CV-441J |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| O. LANE McCOTTER, ROBER T M. JONES, M.D., DAVID L. EGLI, M.D., E IANE JEFFS and AEDEC INTERNATIONAI , INC., | ) ) ) ) | **ORDER** |
| | ) | |
| Defendant s. | ) | |

* * * * * * * *

On September 25, 1998, following full briefing, the Court held a hearing on

defendant AEDEC International, Inc.'s, motion for summary judgment. Rebecca L. Hill and

William J. Hansen appeared on behalf of defendant AEDEC; and Nathan B. Wilcox and Ross C.

Anderson appeared on behalf of plaintiff Angela Armstrong, who was also present. At the close

of the hearing, the Court reserved its decision on AEDEC's motion. Now, after reviewing the

submitted motions and memoranda, and after hearing counsel's arguments, and for reasons

discussed below, AEDEC's motion for summary judgment is denied in part and granted in part.



Scanned ___  Faxed ___  Not Faxed ___

**Brief Background**

In the early evening on March 19, 1997, Michael Valent, an inmate at the Utah State Prison and a diagnosed schizophrenic, was observed in his cell in the prison psychiatric ward with a cloth pillowcase over his head.[1]   Valent was asked by correctional officers to remove the pillow case, but he did not.  Later in the evening, the Utah State Prison's "Special Operations Team" arrived at Valent's cell.  Valent still had the pillowcase over his head.  He did not respond to verbal requests to remove the pillowcase.  At approximately 9:00 p.m. the Special Operations Team entered Valent's cell, removed the pillowcase, and removed Mr. Valent.  Valent's prison clothing was then cut off and he was led to a different cell where he was placed in a restraint chair manufactured by defendant AEDEC.

The restraint chair, a PRO-RESTRAINT ® Violent Prisoner Chair Model RC1200DLX, which was designed and manufactured by AEDEC, was one of two such chairs purchased by the Utah State Prison in April and June of 1995.  The chair, a type of "multi-point restraint," is made of a steel frame and a rigid plastic seat, to which a waist belt restraint, two shoulder/torso restraints, two wrist restraints, and a leg restraint are attached.   The restraint chairs, which were shipped unassembled, came with four-pages of assembly instructions and a one page "Manufacturer's Warning."  There are no warnings on the restraint chair itself.

At approximately 1:00 p.m. on March 20, 1997, after approximately sixteen hours in the restraint chair, Mr. Valent was released from the chair.  Not long after his release, and while

---

[1]     For purposes of this brief background, these facts are adopted from the plaintiff's Amended Complaint filed on November 3, 1997, and from the state defendants' memorandum in support of their motion for summary judgment filed on July 1, 1998.  Although to some extent the facts surrounding Mr. Valent's death were still at issue, this brief recitation represents agreed facts that do not appear to be in dispute.

attempting to shower, Mr. Valen  collapsed.  Although Mr. Valent received cardiac life support at the prison, the attempts to revi ve him were not successful.  Mr. Valent was then transferred by ambulance to the Alta View Hos )ital where was officially pronounced dead at 2:35 p.m.  The immediate cause of death, as rep )rted by the Office of the Medical Examiner for the State of Utah, was multiple pulmonary e1 1boli.

On May 29, 1997, the pla intiff, mother of Mr. Valent and personal representative of his estate, commenced an action aga nst the defendants by filing a complaint in the Third Judicial Court for the State of Utah.  Purs uant to 28 U.S.C. §§ 1441 and 1446, the defendants removed the action to this court.  On Nov( mber 3, 1997, the plaintiff filed an Amended Complaint in this court asserting the following clai ns: survival and wrongful death under 42 U.S.C. § 1983 and violations of the Article I, Sectio 1 9 of the Utah State Constitution against the state defendants; and products liability, strict liabi ity, and breach of warranty against AEDEC.

On July 1, 1998, both the state defendants and AEDEC filed motions for summary judgment.  On or about July 23,   998, the state defendant's agreed to a settlement with the plaintiff.  On September 1, 1998  the plaintiff filed her opposition to AEDEC's motion.  AEDEC filed its reply memorandum on S eptember 23, 1998.

I

In its motion, AEDEC as erts that it is entitled to summary judgment on the following claims: failure to warn; negligen  design and/or manufacture; inadequate warnings; strict liability; and breach of warranty.

Generally, under Utah la\ /, a product that fails to provide an adequate warning is an unreasonably dangerous product  See House v. Armour of America, Inc. ("House II"), 929 P.2d 340, 343 (Utah 1996).  AEDEC ( oncedes that it did not warn users of the restraint chair of what

-3-

it suggests were the "well known" risk of blood clotting due to immobilization.  Nor did AEDEC

advise users of the restraint chair of the recognized need for periodic range-of-motion exercises

to reduce the risk of blood clotting.  Instead, AEDEC premises its failure to warn argument on

the so-called "sophisticated user" defense.  Under this defense, as adopted by the Utah Supreme

Court, a party may avoid liability for failure to warn by demonstrating that "the 'ultimate user

possesses special knowledge, sophistication or expertise' to such an extent that 'the user's

knowledge of the danger is equivalent to prior notice.'" House II, 929 P.2d at 345 (quotation

omitted).

AEDEC claims that because the "users" of the restraint chair--the assigning prison doctor

and the prison nurses--were "sophisticated users," AEDEC could rely on their special knowledge

and therefore had no duty to warn of the risks of immobilization in the restraint chair, including

thromboses and blood clotting.  AEDEC argues that the doctor and nurses knew from their prior

medical training and experience of the dangers of prolonged immobilization and the risk of such

immobilization causing blood clots.  AEDEC also states that such knowledge is "generally

known" in the medical community.

Dr. David Egli, the prison doctor who assigned Michael Valent to the restraint chair, tells

a slightly different story.  In his deposition Dr. Egli states that he did not consider placement in

the restraint chair for a period of sixteen hours to be a significant risk of pulmonary embolism.

(Deposition of David L. Egli M.D., at 195, attached as Ex. "H" to AEDEC's Mem. in Supp. of

Mot. for Summ. J.)  Significantly, Dr. Egli also testified that he was not aware of any reports in

the medical literature that linked immobilization in a restraint chair to pulmonary embolism.

(Id.)

Tellingly, and based entirely on Dr. Egli's testimony, the state defendants have

-4-

previously argued that "[n]o facts exist to establish that Dr. Egli knew that Valent was 'very likely' to suffer a pulmonary embolism if placed in the restraint chair." (Mem. in Support of State Defendants' Mot. for Summ. J., at 9.)  Thus, it appears that both the state defendants and Dr. Egli agree that he was not fully aware of the risks associated with prolonged immobilization.

In addition, other experts opined that there was no evidence to indicate that any of the prison medical staff treating Michael Valent were aware of the substantial risk he faced.  (See Expert Report of Jeffrey L. Metzier, at 17, attached as Exhibit "M" to Plaintiff's Mem. in Opp. to AEDEC's Mot. for Summ. J.)  Moreover, in its argument on punitive damages, AEDEC states "that there is no evidence in this case of prior incidents of injury or death due to blood clotting caused by placing a person in the Restraint Chair." (AEDEC's Mem. in Supp. of Mot. for Summ. J., at 35.)

If, as AEDEC suggests, there are no known incidents of blood clots forming as a result of placing a person in the restraint chair, it would appear to be contradictory for AEDEC to argue that it should be shielded from liability because the risk of blood clotting due to immobilization in the restraint chair were "generally known" in the medical community.

Because there appears to be a material of issue of fact regarding Dr. Egli's and the prison medical community's awareness of the risk of pulmonary embolism, AEDEC has not sufficiently demonstrated that, as a matter of law, it would prevail on its sophisticated user defense.  Utah courts have suggested that when there is a dispute regarding the extent of a community's knowledge in relation to a sophisticated user defense, resolution of that issue should be left to the trier of fact.  See House v. Armour of America, Inc. ("House I"), 886 P.2d 542, 550 (Utah Ct. App. 1994).  Accordingly, AEDEC's motion for summary judgment on the failure to warn claims is denied.

II

In support of its motion for summary judgment on plaintiff's remaining claims, AEDEC argues that, as a matter of law, the plaintiff cannot prove that the restraint chair caused her son's injury and resulting death. Specifically, AEDEC claims that the plaintiff cannot show that any of the claimed defects in the restraint chair--the position and angle that the legs are restrained in, the chair's leg restraints, and the curvature of the front of the chair's seat--proximately caused the pulmonary embolism that caused Michael Valent's death. Without this proximate cause link, AEDEC argues that summary judgment is warranted.

Generally, the issue of proximate cause presents a question of fact that should be left to the jury, see House I, 886 P.2d at 551, and one that cannot be resolved as a matter of law. See Butterfield v. Okubo, 831 P.2d 97, 106 (Utah 1992). Admittedly, AEDEC is correct when it states that plaintiff shows no direct evidence of proximate cause. What plaintiff does provide, however, is testimony that supports an inference of proximate cause. Generally, evidence that would support an inference of proximate cause is enough to defeat judgment as a matter of law. See id.; Nay v. General Motors Corp., 850 P.2d 1260, 1264 (Utah 1993).

In support of the inference, the plaintiff offers the testimony of Dr. Bloswick, an ergonomics expert, who opines that the restraint chair, as designed, was "unsafe and unreasonably dangerous for its intended use." (Expert Report of Donald S. Bloswick, Ph.D., at ¶ 1, attached as Exhibit "I" to Plaintiff's Mem. in Opp. to AEDEC's Mot. for Summ. J.) In his uncontroverted expert opinion, Dr. Bloswick stated that the front of the restraint chair seat "presents compression stress to the underside of the leg." (Id. at ¶1.B.) In addition, the plaintiff's medical experts also opine that the cause of Michael Valent's death was immobilization in the restraint chair. (See Affidavit of Philip L. Roberts, M.D., at ¶¶ 8, 9, 30 &

-6-

35, attached as Ex. "B" to Plaintiff's Mem. in Opp. to AEDEC's Mot. for Summ. J.; Deposition

of Peter P. Heinbecker, at 123, attached as Ex. "K" to Plaintiff's Mem. in Opp. to AEDEC's Mot.

for Summ. J.)  In particular, Dr. Edward Leis, the deputy chief medical examiner for the State of

Utah, and the doctor who performed Michael Valent's autopsy, opined that "[t]he restraint and

prolonged immobilization of Michael Valent in the restraint chair . . . is the main precipitating

factor in the chain of events that led to his development of thromboses and resulting pulmonary

emboli."  (Expert Witness Report of Edward A. Leis, M.D., at 2, attached as Ex. "N" to

AEDEC's Mem. in Supp. of Mot. for Summ. J.)

 Examining this evidence, as the court must, in the light most favorable to the plaintiff, the

court cannot say with any certainty that a reasonable juror could not infer that the restraint chair

was the proximate cause of Michael Valent's injuries and resulting death.  See Nays, 850 P.2d at

1264.  Accordingly, because material factual disputes remain, AEDEC's motion for summary

judgment is denied.

III

 In her Complaint, the plaintiff seeks punitive damages because AEDEC "manifest[ed] a

knowing and reckless indifference toward, and disregard of, the rights of [Michael] Valent."

(Am. Comp. ¶¶ 49 & 50.)  AEDEC, challenges this characterization and has moved for summary

judgment on the punitive damages issue.

 Generally, punitive damages are only awarded in exceptional cases and are not available

for ordinary negligence.  See Behrens v. Raleigh Hills Hosp., Inc., 675 P.2d 1179, 1186 (Utah

1983.); see also Boyette v. L.W. Looney & Son, Inc., 932 F. Supp. 1344, 1347 & 1350 (D. Utah

1996) (noting that "something more than the mere commission of a tort is always required for

punitive damages") (citation and quotation omitted).

The standard for proving that a defendant acted with the requisite "knowing or reckless indifference" to support an award of punitive damage, has three parts:

> That is, the defendant must either know or should know that such conduct would, [1] in a high degree of probability, result in substantial harm to another, and [2] the conduct must be highly unreasonable conduct, or an extreme departure from ordinary care, [3] in a situation where a high degree of danger is apparent.

Behrens, 675 P.2d at 1187 (internal quotations and citations omitted).  Plaintiff suggests that because experts have testified about the known and substantial risk of danger associated with immobilization, and one expert has testified that the restraint chair was unsafe and unreasonably dangerous, "AEDEC clearly had knowledge that there was a high degree of probability of harm from the use of its product." (Plaintiff's Mem. in Opp. to AEDEC's Mot. for Summ. J., at 31.)

Despite the plaintiff's contentions, the evidence that has been offered regarding the risk of danger associated with the use of the restraint chair, is at best disputed.  The evidence, while still subject to much dispute, may support a finding that it was not a defect or failure to warn in the restraint chair that resulted in Michael Valent's death, but rather the lack of care by the state prison staff.

The burden is on the plaintiff to show by clear and convincing evidence any entitlement to punitive damages.  Utah Code Ann. § 78-18-1 (1) .  The plaintiff, however, has not carried this burden.  The plaintiff has failed to offer any evidence that AEDEC was aware, to a high degree of probability, that immobilization in the restraint chair would result in substantial harm.[2]  When asked at the hearing if plaintiff had any other evidence to support her punitive damage claim, plaintiff's counsel stated that he did not.

---

[2]     Indeed, the plaintiff has herself argued that such risks were not generally well known. See Part I, infra.

-8-

Although implicit in this order is a conclusion that AEDEC may be liable under various theories of products liability, the evidence thus far presented (and acknowledged as the only evidence), merely supports ordinary tort liability. This is simply not enough. See Behrens, 675 P.2d at 1186-87; Boyette, 932 F. Supp. at 1349-50. The plaintiff's evidence, mainly the testimony of Dr. Bloswick--that he restraint chair was unreasonably dangerous--does not rise to the exceptional level necessary to demonstrate that AEDEC acted maliciously or with a knowing or reckless indifference towards others when it designed, manufactured, and marketed the restraint chair. See Behrens, 675 P.2d at 1186-87. Because none of the plaintiff's evidence would justify submitting the punitive damages to the jury, AEDEC's motion for summary judgment on the punitive damages issue is granted. See Boyette, 932 F. Supp. at 1349.

### Conclusion

For the foregoing reasons,

IT IS ORDERED that defendant AEDEC's Motion for Summary Judgment on the punitive damages issue is GRANTED.

IT IS FURTHER ORDERED that defendant AEDEC's MOTION for Summary Judgment on the remaining issues is DENIED.

DATED this 13 day of October, 1998.

BY THE COURT:

BRUCE S. JENKINS, Senior Judge
United States District Court

-9-

klh

```
                United States District Court
                          for the
                     District of Utah
                    October 14, 1998


          * * MAILING CERTIFICATE OF CLERK * *


Re:  2:97-cv-00441



True and correct copies of the attached were mailed by the clerk to the
following:


        Mr. Ross C. Anderson, Esq.
        ANDERSON & KARRENBERG
        50 W BROADWAY STE 700
        SALT LAKE CITY, UT  84101
        FAX 9,3647697

        Dan R. Larsen, Esq.
        UTAH ATTORNEY GENERAL'S OFFICE
        160 E 300 S
        PO BOX 140811
        SALT LAKE CITY, UT  84114-0811
        PFAX 9,3660101

        Ms. Barbara H Ochoa, Esq.
        UTAH ATTORNEY GENERAL'S OFFICE
        LITIGATION UNIT
        160 E 300 S 6TH FL
        PO BOX 140856
        SALT LAKE CITY, UT  84114-0856

        Chou Chou Collins, Esq.
        UTAH ATTORNEY GENERAL'S OFFICE
        LITIGATION UNIT
        160 E 300 S 6TH FL
        PO BOX 140856
        SALT LAKE CITY, UT  84114-0856
        PFAX 9,3660150

        William J. Hansen, Esq.
        CHRISTENSEN & JENSEN
        175 S WEST TEMPLE STE 510
        SALT LAKE CITY, UT  84101
        FAX 9,3553472
```