FILED

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

\* \* \* \* \* \* \* \* \*

ANGELA M. ARMSTRONG, individually )
and as the personal representative of the Estate )
of Michael D. Valent, )
       )
       )   No.  2:97-CV-441J
    Plaintiff, )
       )
v. )
       )
       )   **MEMORANDUM OPINION AND**
O. LANE McCOTTER, ROBERT M. JONES, )  **ORDER**
M.D., DAVID L. EGLI, M.D., DIANE JEFFS )
and AEDEC INTERNATIONAL, )
INC., )
       )
    Defendants. )

\* \* \* \* \* \* \* \*

On December 4, 1999, the Court held a hearing on defendant AEDEC International,

Inc.'s Motion to Apportion Fault Pursuant to the Utah Liability Reform Act.  Rebecca L. Hill and

William J. Hansen appeared on behalf of defendant AEDEC; and Nathan B. Wilcox and Ross C.

Anderson appeared on behalf of plaintiff Angela Armstrong.  At the close of the hearing the

Court reserved its decision on AEDEC's motion.  Now, after reviewing the submitted motion

and memoranda and after hearing and considering counsel's arguments, and for reasons

discussed below, and within the limits below set forth, AEDEC's motion is granted.

*171*

**I**

On November 6, 1998, following this court's denial of AEDEC's motion for summary judgment, AEDEC filed its motion to apportion fault.  In its motion, AEDEC argues that, upon request, the court is required under Utah's Liability Reform Act to order the jury to consider whether the acts or omissions of the State of Utah or any of AEDEC's co-defendants contributed to the death of Michael Valent, and what, if any, percentage of fault should be allocated to these persons.  See Utah Code Ann. § 78-27-38 (4) (a) (1987) ("In determining the proportionate fault attributable to each defendant, the fact finder may, and when requested by a party shall, consider the conduct of any person who contributed to the alleged injury . . . .")

Generally, a request for apportionment or allocation of fault is routine.  Upon the request of a party, the court directs the jury to examine the relative culpability of the plaintiff and the defendant and then assign a percentage of fault to each.  Under Utah's Liability Reform Act, so long as the plaintiff is not more than fifty percent at fault, the plaintiff may recover from a defendant that defendant's proportionate share of damages suffered by plaintiff and attributed to that defendant's fault.  See Utah Code Ann. § 78-27-38 (2).  Under Utah law, no defendant shall be liable for any amount in excess of his proportionate share.  See Utah Code Ann. § 78-27-38 (3).

What complicates this action at this stage is the fact that AEDEC's co-defendants, O. Lane McCotter, Robert Jones, David Egli and Diane Jeffs (collectively the "State Employees"), have settled with the plaintiff and have been dismissed.  (See Order of Dismissal of State Defendants, filed December 1, 1998, file doc. no. 166.)  According to the plaintiff, this settlement and the resulting dismissal forecloses any request for apportionment.  In addition, the plaintiff argues that because the State of Utah was never a defendant in this action, no claim for

apportionment or allocation concerning the State of Utah is permissible.

## II

In 1986, Utah's Liability Reform Act, amended Utah's Comparative Liability Act, see Utah Code Ann. § 78-27-37 *et seq.*, in part to abolish the common law theory that multiple tortfeasors may be jointly and severally liable to an injured plaintiff.  See Field v. Boyer Co., L.C., 952 P.2d 1078, 1085 (Utah 1998) (Stewart, J., dissenting); National Serv. Indus, Inc., v. B.W. Norton Mfg. Co., 937 P.2d 551, 554-555 (Ut. Ct. App. 1997).  The Liability Reform Act limited the liability of each tortfeasor or "defendant" to his or her proportionate share of "fault." See Utah Code Ann. § 78-27-38 (3).

The Act broadly defines a "defendant" to mean "a person, other than a person immune from suit . . ., who is claimed to be liable because of fault to any person seeking recovery." Utah Code Ann. § 78-27-37 (1).  Accordingly, the class of persons who may be considered a "defendant" under the Act goes beyond those named as a defendant to also include **all** persons who are claimed to be liable because of fault.  See id.  The term "fault" is defined in the Act to include any "actionable breach of legal duty, act, or omission proximately causing or contributing to injury . . . including negligence in all its degrees, . . . , strict liability, . . . product liability, and misuse, modification, or abuse of a product." Utah Code Ann. § 78-27-37 (2).

To determine the proportionate fault of any "defendant" under the Act, *i.e.*, the fault of any person claimed to be liable to the person seeking recovery, the fact finder may, and "when requested by a party shall, consider the conduct of any person who contributed to the alleged injury regardless of whether the person is a person immune from suit or a defendant in the action and may allocate fault to each person seeking recovery, to each defendant, and to any person

immune from suit who contributed to the alleged injury." Utah Code Ann. § 78-27-38 (4) (a).

Thus, under the plain language of the Act, when requested by a party, the fact finder must

consider the proportionate fault of any person claimed to be liable whether or not that person is a

party or immune from suit.   It is clear from this plain language that it is "fault," *i.e.*, an act or

omission that may have led to a person's injury, and not status that triggers the application of the

apportionment principles found in the Act.

 Although the language of the Liability Reform Act defines "defendant" broadly to

include " a person . . . who is claimed to be liable," and not just those persons named as a

defendant in an action, the Utah Supreme Court's recent ruling in Field v. Boyer Co., L.C., 952

P.2d 1078, 1080-81 (Utah 1998), departs from this plain meaning.  In Field, the Utah Supreme

Court examined the Act and concluded that the fault of the plaintiff's unknown assailant—a

person who was claimed to have contributed to plaintiff's injuries—could not be allocated

because the unknown assailant was neither a party nor a person immune from suit.  See id. at

1081-82.  The narrow definition of "defendant" adopted by the Field court appears to conflict

with the express definition found in the statute—a conflict the dissent pointed out.  See id. at

1089 (Russon, J., dissenting).

 The context in which the Field court made its decision must be examined to provide any

proper understanding of the court's ruling.

 In 1994, Lois Field was an employee of Mervyn's, a department store located in a

shopping center known as Brickyard Plaza.  While leaving work one September evening, she was

assaulted on her way to the employee parking lot.  Her assailant attacked her from behind and

tied a rope around her neck.  She was physically and sexually assaulted.  Her assailant was never

caught.  Some time later, Ms. Field filed an action against Mervyn's and the owners and

operators of Brickyard Plaza (collectively the "Brickyard defendants"), alleging, among other things, negligence in failing to provide adequate security.  Following commencement of the action, the Brickyard defendants filed a motion with the trial court seeking to have the fault of Ms. Field's unknown assailant apportioned pursuant to the Liability Reform Act.  The trial court granted the motion, concluding that the Act requires a comparison of negligent and intentional conduct and that the unknown assailant's fault must be allocated and apportioned.  Ms. Field appealed.

On appeal, the Utah Supreme Court wrestled with the question of whether the term "fault" under the Liability Reform Act included both negligent acts and intentional conduct.  Then Chief Justice Zimmerman, who wrote the court's decision, agreed with the trial court's conclusion and noted that, "[C]early an intentional tort such as a battery is an act that proximately causes or contributes to injury or damage.  Thus, we conclude that the legislature included intentional acts in its comparative fault scheme." Field, 952 P.2d at 1080.  Justice Zimmerman's conclusion, however, was not joined by a majority of the court.  Justice Howe wrote separately to mention only that he "concur[red] in the result." Id. at 1082.  Justices Stewart and Durham, joined in a dissent and challenged this conclusion at length.  See id. at 1082-89.  Only Justice Russon appears to have agreed with this conclusion of Justice Zimmerman, although he, too, wrote a dissent.  See id. at 1089-90.  Thus no majority was reached on the issue of whether intentional conduct could be apportioned under the Act.

Elsewhere in his opinion, Justice Zimmerman concluded that, under the Liability Reform Act, because the plaintiff's assailant was neither a party to the action nor a person immune from suit, the fault of the named defendants could not be reduced by the assailant's fault.  Id. at 1080-82.  In reversing the trial court, Justice Zimmerman stated that, although the Act required a fact

finder to "consider" the conduct of any person who contributed to the alleged injury, under the Act, fault could only be *allocated* "to plaintiffs, defendants, and persons immune from suit." Id. at 1080 (citing and quoting from Utah Code Ann. § 78-27-38 (4) (a)).  Therefore, because the unknown assailant was neither named as a defendant nor immune from suit, no percentage of fault could be allocated or apportioned to him.  See id. at 1082.  Justice Zimmerman was joined in this conclusion by Justices Stewart and Durham.  See id. at 1083 (Stewart, J., concurring in part, dissenting in part) ("I agree that Utah's Comparative Fault Act, . . . does not permit the fault of a defendant to be reduced by the fault of a nonimmune nonparty.") (internal citation omitted).  Thus, to the extent that the Field decision may reflect the view of a majority, it is on this issue.

The plaintiff in the present action, Ms. Armstrong, reads the Field decision not only to bar the apportionment of fault to persons who were never joined as a party defendant, but also to bar apportionment of fault to persons who, although joined, have been dismissed out of the action.

Admittedly, the exact holding of the Field decision is hard to discern.  If the Utah Supreme Court had adopted the conclusion that intentional conduct is subject to apportionment and allocation in the same way that negligent conduct is, the court would have been faced with the practical unpleasantness of allowing the defendants in Field to reduce (and likely avoid) any liability for their independent failure to protect the plaintiff—an irrational result Magistrate Judge Boyce of this Court noted in the factually similar case of Cortez v. University Mall Shopping Ctr., 941 F. Supp. 1096, 1098-1100 (D. Utah 1996).  By reading the Liability Reform Act to limit allocation of fault only to plaintiffs, **named** defendants, and persons immune from suit—thus barring any allocation of fault to plaintiff's unknown assailant—the court avoided this problem but ignored the Act's broad definition of "defendant."  As stated previously, the Act

defines a "defendant" as "a person, other than a person immune from suit . . . , who is claimed to

be liable because of fault to any person seeking recovery." Utah Code Ann. § 78-27-37 (1).

There is no doubt but that the unknown assailant in Field was a person who was liable for

the plaintiff's injuries. Yet to allow a reduction in the negligent fault attributable to the

Brickyard defendants for the intentional acts of an unknown third person would have bordered on

the nonsensical. See, e.g., Field, 952 P.2d at 1088 (Stewart, J., dissenting) (asserting that such a

comparison is "preposterous" because unlike negligence, the duty to avoid harmful and criminal

intentional conduct is "absolute," and stating that it would be "patently unfair to allow [a

defendant's] liability to a faultless, injured plaintiff to be reduced or even eliminated by the

culpability of an intentional wrongdoer, thereby depriving the plaintiff of an adequate remedy or

any remedy at all. Such an application . . . would eviscerate defendant's duty to prevent such a

wrong."); Cortez, 941 F. Supp. at 1098-99 (noting that because an intentional tortfeasor's

conduct would be the immediate casual connection to any harm suffered by the plaintiff, and the

more substantial cause in a strict comparison formula, requiring a comparison between negligent

and intentional acts in a claim based on a failure to protect would "distort the protections a

plaintiff should be able to claim . . . ."); Kansas State Bank & Trust Co. v. Specialized Transp.

Servs., Inc., 819 P.2d 587, 606 (Kan. 1991) (refusing to apply comparative fault in a sexual

assault case stating that "[n]egligent tortfeasors should not be allowed to reduce their fault by the

intentional fault of another that they had a duty to protect."). For that reason, the court seems to

have avoided the thorny intentional conduct issue by relying on the nonparty status of the

assailant as a means for denying allocation.

To this court, it appears that the Field court's interpretation of the term "defendant" was

driven more by its holding concerning the allocation of intentional conduct under the Act, than

an analysis of the Act's language.

Although the result of the Field court's holding is arguably correct, the path the court

followed in reaching this result has no direct support in the Act or in Utah case law.  For

example, in S.H. v. Bistryski, 923 P.2d 1376, 1382-83 (Utah 1996), a unanimous Utah Supreme

Court came to the opposite conclusion.

In Bistryski, the three-year old plaintiff was bitten by the defendant's dog and sued to

recover for her injuries.  Although the jury found that the defendant's dog did indeed bite the

plaintiff, it only apportioned twelve percent of the fault to the defendant.  The remaining eighty-

eight percent was apportioned to a nonparty, the plaintiff's mother.  Id. at 1379.  On appeal, the

Utah Supreme Court had no problem apportioning fault to the plaintiff's mother even though she

was not a party.  Quoting directly from the language of the Liability Reform Act, the court

stated:

> "In determining the proportionate fault attributable to each defendant, the fact finder
> may, and when requested by a party shall, consider the conduct of *any person* who
> contributed to the alleged injury regardless of whether the person is a person immune
> from suit or a defendant in the action."   The plain language of section 78-27-38
> permits a trier of fact to consider the conduct of "any person" for purposes of
> proportioning fault.  In the case before us, [plaintiff's mother] qualifies as "any
> person" under the statute.  Therefore it was proper for the jury to consider the issue
> of [the mother's] negligence . . . .

Id. at 1382-83 (quoting Utah Code Ann. § 78-27-38 (4) (a)) (emphasis in original).   Thus,

Bistryski undisputedly holds that in certain circumstances fault may be apportioned to a nonparty

under the Act.

It is difficult to reconcile the holdings of Field and Bistryski.  At first glance, they appear

to be in direct conflict; one allows the fault of a nonparty to be apportioned, the other does not.

Indeed, the Field court briefly noted this conflict in a footnote.  See Field, 952 P.2d at 1080 n.2.

-8-

However, the Field court did not expressly overrule Bistryski; rather, it observed that the Bistryski decision may have been ill-informed because it did not examine the second part of section 78-27-38 (4) (a) of the Liability Reform Act, which, according to the Field court, allows attribution of fault "only to plaintiffs, defendants, and immune persons." Field, 952 P.2d at 1080 n.2.  How ironic it is that Field would suggest that Bistryski was ill-informed when, in fact, Field fails to examine section 78-27-37 (1) that defines the term "defendant" broadly under the Act to mean any "person . . . who is claimed to liable because of fault . . . ."  The Field court's interpretation that nonparties, even those who are claimed to be liable for the plaintiff's injuries, are not "defendants" under the Liability Reform Act is squarely at odds with the plain language of the Act.

It remains to be seen what Field holds.  Further clarification from the Utah Supreme Court is necessary.  If Field holds that all nonparties are outside of the reach of apportionment under the Act, a defendant in AEDEC's position may not be able to argue that the fault of identifiable persons who have not been joined in the action because of settlement or some other reason, but who are clearly liable for a plaintiff's injuries, should be considered and allocated under the Act.  Or it may be that Field stands for a proposition that only nonparties who remain unknown and who acted intentionally cannot have their fault considered and allocated.  Or, given the lack of agreement among the justices, it may be that Field stands for nothing.  In that case, Bistryski would likely control and a defendant in AEDEC's position would be able to argue that the fault of nonparties should be allocated under the Act.

Whatever Field stands for makes apportioning fault to nonparties problematical—a situation the legislature (or the Utah Supreme Court) needs to address.  Resolution of this problem must be left for another day, however.  Even if this court was in a position to resolve a

conflict in the case law of Utah's highest court, it need not do so.   There are separate grounds for granting AEDEC's motion.

In the case now before this court, AEDEC has asked the court to allow the jury to consider the fault of the State Employees—persons originally named as defendants in the action—and allocate and apportion fault to them in accordance with Utah's Liability Reform Act. In Sullivan v. Scoular Grain Co. of Utah, 853 P.2d 877, 878 (Utah 1993), and more recently in National Serv. Indus., Inc. v. B.W. Norton Mfg. Co., 937 P.2d 551, 555-56 (Ut. Ct. App. 1997), Utah courts concluded that once a defendant is dismissed from an action, absent a pre-dismissal cross-claim, the remaining defendant may not seek apportionment and, therefore, no fault may be allocated to the dismissed defendant.   The defendants in Sullivan and National Service were dismissed as a result of a favorable determination on their motions for summary judgment.   See Sullivan, 853 P.2d at 883-84; National Serv., 937 P.2d at 553   Thus dismissal was on the merits.

In this case, however, a settlement with the plaintiff was the impetus for the State Employees' dismissal.   There has been no merits determination.   Neither Sullivan or National Service forecloses a defendant from allocating fault to a co-defendant who may have been dismissed as a result of a settlement agreement.   In fact, in Sullivan, the Utah Supreme Court left open this very possibility.   See Sullivan, 853 P.2d at 878 n.3. ("We do not decide whether a jury may apportion the fault of persons who are not parties in an action for reasons other than dismissal on the merits.   The question may arise when potentially liable persons are excluded from an action due to, for example, failure of service of process, **settlement**, a covenant not to sue, a plaintiff's failure to join a party, an applicable statute of limitations, or some other affirmative defense.") (emphasis added).

Importantly, the State Employees were only dismissed from this case **after** AEDEC filed

-10-

its motion seeking apportionment.  Thus, at the time AEDEC sought apportionment the State

Employees were named defendants.  Moreover, these defendants were not dismissed on the

merits, but were voluntarily dismissed as the result of a settlement with the plaintiff.  Although,

the State Employees are no longer named defendants, they were and remain "defendants" as that

term is defined in the Utah Liability Reform Act and as interpreted by the Utah Supreme Court.

The State Employees remain persons who were claimed to be liable to the plaintiff because of

fault.  Indeed, the plaintiff herself originally joined the State Employees as defendants and

asserted that these persons were responsible for the death of her son.  (See Am. Compl. ¶¶ 15-

28.)  In addition, AEDEC itself pleaded that the plaintiff's damages were proximately caused by

the State Employees and "other individuals or corporations not a party to this action . . . ."

(AEDEC International Inc.'s Am. Answer to Am. Compl, at 4.).

Moreover, up until the time they settled with the plaintiff, each of the State Employees

actively participated in the action.  They collectively filed an answer, participated in pre-trial

discovery, vigorously litigated several discovery disputes, and filed a motion for summary

judgment.  They are not strangers to the litigation.  They are, at this stage, identifiable former

defendants, albeit presently nonparties. Therefore, as guided by the Utah Supreme Court in Field,

Bistryski, and Sullivan, this court concludes that the State Employees who were formally named

defendants in this action are still "defendants" as that term is defined by the Utah Liability

Reform Act.  Accordingly, their fault may be considered by the fact finder and, if justified by the

evidence, their proportionate share of fault allocated in accordance with Utah's Liability Reform

Act.

-11-

### III

To the extent AEDEC wishes to have the fault of the State of Utah considered by the fact finder, this court concludes that it may.  As previously mentioned, the Liability Reform Act allows for fault to be allocated between the person seeking recovery, any person who is claimed to be liable by the person seeking recovery, and any person immune from suit.  Utah Code Ann. § 78-27-38 (4) (a).  Under Utah law, a governmental entity such as the State of Utah may be immune from any negligence claims brought by the plaintiff.  See Utah Code Ann. § 63-30-10 (10) (providing that governmental entities are immune for the negligent acts or omissions of their employees that arise out of, or in connection with, the incarceration of any person in any state prison).[1]  The plaintiff impliedly recognized this immunity when she choose not to name the State of Utah as a party defendant.  Therefore, to the extent that the Act permits the fault of an immune person or entity to be considered and allocated by a fact finder, AEDEC's motion as to the State of Utah is granted.[2]

### Conclusion

Of course, this decision should not be read to say that as a factual matter AEDEC is entitled to have the fault of the State Employees and the State of Utah considered by a jury.  AEDEC still has the burden of demonstrating that these persons in some way contributed to the death of Michael Valent.  This decision merely gives AEDEC permission to put on evidence that

---

[1]   Of course, plaintiff's constitutional claims were not impaired by this broad immunity. See Bott v. Deland, 922 P.2d 732, 736 (Utah 1996).

[2]   To the extent that the State Employees acting in their individual capacities may be deemed immune under Utah's Governmental Immunity Act, this analysis would also apply to them.

-12-

may support its contention that others were at fault for Michael Valent's death.  If they fail to satisfy this evidentiary burden, however, allocation is not available.  See Acculog, Inc. v. Peterson, 692 P.2d 728, 730-31 (Utah 1984).

Therefore, for the reasons recited above,

**IT IS ORDERED** that defendant AEDEC's Motion to Apportion Fault Pursuant to the Utah Liability Reform Act is GRANTED.

**IT IS FURTHER ORDERED** that a final pretrial hearing is scheduled for April 30, 1999, at 9:30 a.m.  The parties are directed to submit an agreed-upon pretrial order no later than April 26, 1999.  If the parties wish to have this action referred for a settlement conference pursuant to DUCivR 16-3, they should expeditiously advise the court.

DATED this _4_ day of March, 1999.

BY THE COURT:

BRUCE S. JENKINS
United States Senior District Judge

```
                                                         hom
                   United States District Court
                             for the
                        District of Utah
                        March 5, 1999


          * * MAILING CERTIFICATE OF CLERK * *


Re:  2:97-cv-00441



True and correct copies of the attached were mailed by the clerk to the
following:


     Mr. Ross C. Anderson, Esq.
     ANDERSON & KARRENBERG
     50 W BROADWAY STE 700
     SALT LAKE CITY, UT  84101
     JFAX 9,3647697

     William J. Hansen, Esq.
     CHRISTENSEN & JENSEN
     50 S MAIN STE 1500
     SALT LAKE CITY, UT  84144
     JFAX 9,3553472

     Rebecca L. Hill, Esq.
     CHRISTENSEN & JENSEN
     50 S MAIN STE 1500
     SALT LAKE CITY, UT  84144
     JFAX 9,3553472

     Dan R. Larsen, Esq.
     UTAH ATTORNEY GENERAL'S OFFICE
     160 E 300 S
     PO BOX 140811
     SALT LAKE CITY, UT  84114-0811
     JFAX 9,3660101

     Chou Chou Collins, Esq.
     UTAH ATTORNEY GENERAL'S OFFICE
     LITIGATION UNIT
     160 E 300 S 6TH FL
     PO BOX 140856
     SALT LAKE CITY, UT  84114-0856
```